UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| MICHAEL PETERSEN, | Case No. 18-cv-02448-LB |
| Plaintiff, | |
| v. | **ORDER GRANTING MOTION TO DISMISS** |
| CITY OF OAKLEY, et al., | Re: ECF No. 16 |
| Defendants. | |

**INTRODUCTION**

This is an excessive-force case. The plaintiff Michael Petersen alleges that after two Oakley police officers handcuffed him and sat him down, one officer ordered him to get up, became impatient, "abruptly yanked" Mr. Petersen up from behind from his handcuffed arms, broke his arm, intentionally squeezed his broken arm, and delayed getting him medical assistance.[1] Mr. Petersen brings claims under the Fourth and Fourteenth Amendment against the two officers (named as Doe defendants), a *Monell* claim against the City of Oakley, and a supervisory-liability claim against Oakley Police Chief Chris Thorsen.[2]

---

[1] First Amended Complaint ("FAC") – ECF No. 14 at 3–4 (¶¶ 8–18). Citations refer to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] *Id.* at 5–10.

The defendants move to dismiss the claims under Federal Rule of Civil Procedure 12(b)(6).[3] All parties have consented to magistrate-judge jurisdiction.[4] The court can decide the case without oral argument under Civil Local Rule 7-1(b). The court grants the motion to dismiss without prejudice and with leave to amend.

## STATEMENT

On April 28, 2017 at approximately 12:35 p.m., Mr. Petersen "was sitting down in front of Raley's Supermarket" in Oakley, California, "when he was approached by Oakley Police Officers DOES 1–2, who decided to detain and question [Mr. Petersen]."[5] The officers "immediately placed [Mr. Petersen] in handcuffs behind his back and sat him down."[6] Officer Doe 1 ordered Mr. Petersen "to get up from the ground."[7] The officer "became impatient and abruptly yanked [Mr. Petersen] from behind by his handcuffed arms with so much force[] that [Mr. Petersen] immediately felt a strong surge of searing and burning pain in his arm."[8] Officer Doe 2 observed the first officer yank Mr. Petersen's arm.[9] Mr. Petersen "strongly believed that his arm was broken and immediately provided notice to [the officers] of his need for medical assistance."[10] The officers told Mr. Petersen that they did not believe that his arm was broken and told him 'to be a man.'"[11] "It is believed that Defendant Officer D[oe] 1[] then intentionally grabbed the Plaintiff's injured arm in disbelief that the Plaintiff's arm was broken, and tightly squeezed it, causing the Plaintiff to reek [sic] in pain."[12] "After continually observing the Plaintiff in severe pain from his injured arm," the officers "then determined that the Plaintiff's arm was in fact broken and . . .

---

[3] Motion – ECF No. 16.
[4] ECF Nos. 10, 13.
[5] FAC – ECF No. 14 at 3 (¶ 8).
[6] *Id.* at 3 (¶ 9).
[7] *Id.* (¶ 10).
[8] *Id.* (¶ 11).
[9] *Id.* (¶ 12).
[10] *Id.* (¶ 13).
[11] *Id.* (¶ 14).
[12] *Id.* (¶ 15).

called an ambulance for the Plaintiff."[13] A doctor later determined that Mr. Petersen's arm was broken, and Mr. Petersen had surgery to treat his broken arm.[14]

Mr. Petersen alleges on information and belief that that the City of Oakley "does not train, or inadequately trains its police officers in how to handle people who are handcuffed from behind so as not to cause these handcuffed individuals' limbs to break."[15] He alleges on information and belief that the City of Oakley "has a widespread or longstanding custom and practice of not carefully handling individuals once they are in police custody."[16] He alleges that Chief Thorsen is the relevant policymaker for the police department and was responsible for implementing policies regarding the use of force in the field.[17]

Mr. Petersen brings six claims in the operative First Amended Complaint:

1. an excessive-force claim (against Officer Doe 1) and a failure-to-intervene claim (against Officer Doe 2) under the Fourth Amendment based on Officer Doe 1's allegedly yanking Mr. Petersen's arm;
2. an excessive-force claim (against Officer Doe 1) and a failure-to-intervene claim (against Officer Doe 2) under the Fourth Amendment based on Officer Doe 1's allegedly squeezing Mr. Petersen's arm after he was injured;
3. a *Monell* claim against the City of Oakley;
4. a supervisory-liability claim against Chief Thorsen as to the excessive-force and failure-to-intervene claims;
5. a substantive-due-process claim under the Fourteenth Amendment against Officer Doe 1 for actions that "shock the conscience;" and
6. a substantive-due-process claim under the Fourteenth Amendment against Officer Doe 1 for "deliberate indifference."[18]

The defendants move to dismiss claims three through six.[19] In his opposition, Mr. Petersen does not oppose dismissal of claims three and four (the *Monell* and supervisory-liability claims) and

---

[13] *Id.* at 4 (¶ 16).

[14] *Id.* (¶¶ 17–18).

[15] *Id.* (¶ 19).

[16] *Id.* (¶ 21).

[17] *Id.* (¶ 22).

[18] *Id.* at 5–10.

[19] Mot. – ECF No. 16.

ORDER – No. 18-cv-02448-LB  3

asks for leave to amend.[20] Mr. Petersen opposes the motion to dismiss claims five and six (the Fourteenth Amendment claims).[21]

## STANDARD OF REVIEW

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant "fair notice" of what the claims are and the grounds upon which they rest. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint does not need detailed factual allegations, but "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a claim for relief above the speculative level . . . ." *Id.* (internal citations omitted).

To survive a motion to dismiss, a complaint must contain sufficient factual allegations, which when accepted as true, "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 557). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).

If a court dismisses a complaint, it should give leave to amend unless the "pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss and Liehe, Inc. v. Northern California Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990).

---

[20] Opp. – ECF No. 20 at 6.
[21] *Id.* at 3–6.

ORDER – No. 18-cv-02448-LB  4

**ANALYSIS**

Mr. Petersen does not oppose the motion to dismiss claims three and four and asks for leave to amend them. The court dismisses these claims without prejudice and with leave to amend.

The remaining claims in dispute are claims five and six. In them, the plaintiff claims that Officer Doe 1's use of force violates the Fourteenth Amendment's substantive-due-process clause because it was arbitrary and shocked the conscience (claim five) and because it put the plaintiff in danger, exacerbated his injury, and constituted deliberate indifference to his injury because the officer knew about the injury, squeezed the arm after, and "fail[ed] to initially call an ambulance or obtain any other medical treatment" for the plaintiff (claim six).[22] The defendants move to dismiss the claims on the ground that claims of excessive force claims generally are analyzed under the Fourth Amendment, not the Fourteenth Amendment, and the plaintiff alleges no facts to support substantive-due-process claims.[23]

Under *Graham v. Connor*, claims of excessive force generally are addressed under the Fourth Amendment's "objective reasonableness" standard, not the Fourteenth Amendment. 490 U.S. 386, 395–96 (1989); *Blankenhorn v. City of Orange*, 485 F.3d 463, 481 n.12 (9th Cir. 2007) (citing *Tennessee v. Garner*, 471 U.S. 1, 7–8 (1985); *Vernon v. City and Cnt'y of San Francisco*, No. C 07-01286 CRB, 2008 WL 3916264, at *7 (N.D. Cal. Aug. 25, 2008). The Fourteenth Amendment's substantive-due-process clause generally protects against the arbitrary or oppressive exercise of government power. *County of Sacramento v. Lewis*, 523 U.S. 833, 845–46 (1998). "[T]he Due Process Clause is violated by executive action only when it 'can be properly characterized as arbitrary, or conscience shocking, in a constitutional sense.'" *Id*. at 847 (1998) (quoting *Collins v. Harker Heights*, 503 U.S. 115, 128 (1992)); *accord Porter v. Osborn*, 546 F.3d 1131, 1137 (9th Cir. 2008).

"In determining whether excessive force shocks the conscience, the court must first ask whether the circumstances are such that actual deliberation [by the officer] is practical." *Wilkinson*

---

[22] FAC – ECF No. 14 at 10–11.

[23] Mot. – ECF No. 16 at 10.

ORDER – No. 18-cv-02448-LB  5

*v. Torres*, 610 F.3d 546, 553 (9th Cir. 2010) (quotation omitted). "Where actual deliberation is practical, then an officer's 'deliberate indifference' may suffice to shock the conscience. On the other hand, where a law enforcement officer makes a snap judgment because of an escalating situation, his conduct may be found to shock the conscience only if he acts with a purpose to harm unrelated to legitimate law enforcement objectives." *Hayes v. Cnty. of San Diego*, 736 F.3d 1223, 1230 (9th Cir. 2013) (citing *Wilkinson*, 610 F.3d at 554).

The plaintiff's Fourteenth Amendment claims are rooted in the same facts as his Fourth Amendment excessive-force claims. The allegations of excessive force are all during the course of the arrest and generally are properly analyzed under the Fourth Amendment. *Graham v. Connor*, 490 U.S. at 395 n. 10 (explaining that Fourth Amendment protects against excessive force during arrest).

In *Vernon*, the court addressed similar facts and granted summary judgment in favor of the law-enforcement defendants on a plaintiff's Fourteenth Amendment claim alleging that a police officer used excessive force. 2008 WL 3916264, at *2, *7. According to the plaintiff (named Vernon), the officer detained him while he was walking to the train station and "handcuffed him tightly and then threw [him] — or dragged him — into a paddy wagon." *Id.* at 2. The officer "then got onto Vernon's back and started pulling his arms perpendicular to his body, whilst Vernon cried 'please don't break my arm' three times." *Id.* Vernon blacked out because of the pain and because he was having trouble breathing. *Id.* (The officer-defendants' version differed in part: they said that they arrested Vernon without incident. *Id.*) After his arrest, and at the station, Vernon "fell to his left on the floor." *Id.*[24] He said that he was all right but that his arm was "a little sore." *Id.* After booking, and during the ride to the County jail, Vernon complained about pain, said that the officers broke his arm, and asked for medical help. *Id.* A subsequent X-ray then revealed two bone fragments within the elbow joint, representing a possible fracture." *Id*. at 3. Vernon brought Fourth and Fourteenth Amendment claims (among other claims), claiming excessive force. *Id.* at 2. The court granted summary judgment in favor of the law-enforcement defendants on the

---

[24] The facts from this point on appear undisputed.

ORDER – No. 18-cv-02448-LB         6

Fourteenth Amendment claim and held: "When a free citizen claims that law enforcement officials used excessive force in making an arrest, the claim is properly analyzed under the Fourth Amendment rather than under a substantive due process standard." *Id.*

Mr. Petersen alleges a similar scenario: his detention, the handcuffing, and the officer's subsequent use of force (yanking him up by the handcuffed arms (causing the injury) and squeezing the injured arm (causing pain).[25] The court follows *Vernon* as persuasive: this alleges excessive force that is cognizable only as a Fourth Amendment claim. *See id*. Mr. Petersen makes the additional argument that the officers "failed to initially call an ambulance or obtain any other medical treatment for the Plaintiff."[26] The specific allegation in the complaint is that "[a]fter continually observing the Plaintiff in severe pain from his injured arm, the Defendant Officers then determined that the Plaintiff's arm was in fact broken and . . . called an ambulance for the Plaintiff."[27] Considering this allegation with the other allegations regarding the use of force, Mr. Petersen has not plausibly pleaded conduct that shocks the conscience. The allegations do not suggest that actual deliberation by the officer was practical or that the officer acted with a purpose to harm unrelated to legitimate law-enforcement objectives. *Hayes*, 736 F.3d at 1230; *Wilkinson*, 610 F.3d at 553–54.

The court dismisses claims five and six without prejudice and with leave to amend.

## CONCLUSION

The court dismisses claims three through six without prejudice and with leave to amend. The plaintiff must file any amended complaint by July 23, 2018. The court asks the plaintiff to consider whether he really wants to amend his complaint given that the Fourth Amendment claims cover the gravamen of his alleged harm. If he does, then the court asks the defendants to consider whether they might reserve their arguments on any Fourteenth Amendment claims for summary

---

[25] FAC – ECF No. 14 at 3 (¶¶ 8–15).
[26] Opp. – ECF No. 20 at 5.
[27] FAC – ECF No. 14 at 4 (¶ 16).

judgment. The discovery is the same, and perhaps everyone's interests are advanced by moving the case into the case-management phase.

**IT IS SO ORDERED.**

Dated: July 7, 2018

_____
LAUREL BEELER
United States Magistrate Judge